UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JODI HAMRICK,<br><br>Defendant. | NO. CR20-079-JCC<br><br>**INFORMATION** |

The United States Attorney charges that:

### COUNTS 1-4

### (Wire Fraud)

**A.    The Scheme To Defraud**

1.    Beginning at a time unknown, but no later than November 2011, and continuing until on or about June 29, 2016, at Mukilteo, within the Western District of Washington, and elsewhere, JODI HAMRICK and "D.G." devised and intended to devise a scheme and artifice to defraud various victims, including but not limited to, "W.F.," and financial institutions and lenders, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

2.    D.G. and W.F. were partners in "Gluth Contract Flooring," or "GCF," a commercial flooring business based in Mukilteo, Washington.  JODI HAMRICK was the

Information/HAMRICK - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  bookkeeper for GCF.  The essence of the scheme and artifice to defraud was for JODI

2  HAMRICK and D.G. to improperly use GCF funds for their own personal benefit, to

3  fraudulently obtain loans and credit for GCF without the knowledge or authorization of

4  W.F., and to fraudulently alienate assets of GCF without the knowledge or authorization

5  of W.F.  JODI HAMRICK and D.G. engaged in numerous acts of deceit and

6  concealment, including but not limited to: (a) making false and misleading statements

7  and omissions to W.F. and others; (b) refusing to turn over business records that W.F.

8  was entitled to review; (c) maintaining false and misleading business records; (d) making

9  false and misleading statements and omissions in court filings and deposition testimony;

10  and (e) using fraud, forgery, identity theft, and false statements to open bank accounts,

11  obtain loans and credit, and alienate assets without the knowledge or authorization of

12  W.F.  Over the course of the scheme, the total amount of improper personal expenditures,

13  assets that were improperly disposed of, and unauthorized indebtedness incurred by GCF,

14  was approximately one million dollars or greater.

15  **B.   Manner and Means**

16       3.     D.G. and W.F. formed GCF by an operating agreement (the "Agreement")

17  on or about May 10, 2007.  The Agreement provided that D.G. and W.F. would be equal

18  partners, and that D.G. would run the day-to-day affairs of GCF.  The Agreement

19  provided that W.F. would personally guarantee up to $500,000 in credit that would

20  provide capital for the business.

21       4.     The Agreement prohibited D.G. from taking certain actions without W.F.'s

22  written approval, including but not limited to, opening bank accounts for the company's

23  use (other than accounts specified in the Agreement) and borrowing money (apart from

24  specified borrowing authorized by the Agreement).  The Agreement also prohibited D.G.

25  from engaging in significant business decisions, including disposing of property outside

26  the ordinary course of business, without consulting with W.F.  The Agreement also gave

27  W.F. the right to inspect the books and records of the company.

28       5.     In or about 2011, JODI HAMRICK was hired as the bookkeeper for GCF.

Information/HAMRICK - 2

1      6.    It was part of the scheme and artifice to defraud that JODI HAMRICK and

2 D.G. opened bank accounts in the name of GCF without W.F.'s knowledge or

3 authorization.  Per the Agreement, GCF maintained a bank account at Foundation Bank.

4 The Agreement required W.F.'s authorization in order to open any additional bank

5 accounts.  JODI HAMRICK and D.G. opened bank accounts without W.F.'s knowledge

6 or authorization, including but not limited to the following (collectively, the "secret

7 accounts"):

8          a.    on or about September 11, 2012, at Wells Fargo Bank;

9          b.    on or about December 27, 2013, at Bank of America; and

10        c.    on or about February 7, 2014, at Whidbey Island Bank, also known

11             as Heritage Bank.

12      7.    It was further part of the scheme and artifice to defraud that JODI

13 HAMRICK and D.G. used the secret accounts to further the scheme in a variety of ways.

14 Among other things, JODI HAMRICK and D.G. diverted GCF funds to the secret

15 accounts and used those funds to pay improper personal expenses.  JODI HAMRICK and

16 D.G. also used the secret accounts to receive funds from unauthorized loans, to make

17 payments on unauthorized loans, and to transfer and conceal GCF funds.  JODI

18 HAMRICK and D.G. attempted to conceal the secret accounts from W.F. and others.  By

19 using the secret accounts for such activities, JODI HAMRICK and D.G. were able to

20 conceal their scheme from W.F. and others, and to thwart any meaningful inspection of

21 GCF's books and records.  JODI HAMRICK and D.G. discussed the improper use and

22 concealment of the secret accounts in instant messages.  For example, on or about

23 October 28, 2013, in an instant message, D.G. asked JODI HAMRICK if Foundation

24 Bank might "discover" the existence of the Wells Fargo accounts.  Similarly, on February

25 11, 2014, in an instant message, JODI HAMRICK told D.G. that activity related to an

26 unauthorized loan would be concealed in "an already functioning wash account."

27      8.    It was further part of the scheme and artifice to defraud that JODI

28 HAMRICK and D.G. used GCF funds for unauthorized personal expenses.  JODI

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 | HAMRICK and D.G. used GCF funds from a variety of sources, including but not
2 | limited to: GCF's American Express credit cards, GCF's Applied Bank credit card,
3 | GCF's Foundation Bank account, and GCF's Wells Fargo account.  These unauthorized
4 | personal expenses included, but were not limited to: groceries, personal credit card bills,
5 | clothing, liquor, medical expenses, massages, travel expenses, personal taxes, and
6 | mortgage payments.  The unauthorized personal expenses began no later than 2011,
7 | continued until October 2015 or later, and totaled several hundred thousand dollars.

8 |       9.     It was further part of the scheme and artifice to defraud that JODI
9 | HAMRICK and D.G. concealed the unauthorized personal expenses from W.F. and
10 | others in a variety of ways, including but not limited to the following: using the secret
11 | bank accounts to pay for unauthorized personal expenses, and making false and
12 | misleading entries in the books and records of GCF.  JODI HAMRICK and D.G. also
13 | concealed, and attempted to conceal, GCF's true financial condition from W.F. and
14 | others (including representatives of W.F.) who attempted to examine GCF's books and
15 | records to determine its condition.

16 |      10.    It was further part of the scheme and artifice to defraud that JODI
17 | HAMRICK and D.G. discussed with each other how to conceal the unauthorized personal
18 | expenses from W.F. and others.  For example, in an instant message on or about February
19 | 11, 2014 – after a discussion of how to conceal an unauthorized loan – D.G. told JODI
20 | HAMRICK that "the next worry is [W.F.] digging into my Hawaii trip and where/how
21 | I'm paying for it."  In an instant message exchange on or about January 31, 2014, during
22 | a discussion of how to convey GCF funds to D.G. for personal use, JODI HAMRICK
23 | stated, "if I give you 2500 out of GCF it will look like your salary."

24 |      11.    It was further part of the scheme and artifice to defraud that JODI
25 | HAMRICK and D.G. obtained (and attempted to obtain) loans and credit in the name of
26 | GCF, and disposed of GCF assets, without W.F.'s knowledge or authorization.  JODI
27 | HAMRICK and D.G. made false and misleading statements and omissions in the course
28 | of these improper and fraudulent transactions.  JODI HAMRICK and D.G. took these

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  actions to conceal GCF's true financial condition from W.F. and others, and also to pay

2  for unauthorized personal expenses. The unauthorized transactions included, but were

3  not limited to: three loans from Main Street Business Loans ("MSBL"); a loan from

4  Quarterspot; a loan from an individual, "L.M.;" and a sale of GCF receivables to BizFi

5  Funding, a/k/a Quick Capital Funding, a/k/a Merchant Cash & Capital LLC ("BizFi").

6       12.   It was further part of the scheme and artifice to defraud that, on or about

7  July 18, 2013, JODI HAMRICK and D.G. submitted an application for a short-term,

8  high-interest loan from MSBL. D.G. signed the application and verified that he had legal

9  authority to enter into the transaction on GCF's behalf. In truth and fact, as JODI

10  HAMRICK and D.G. knew, D.G. did not have authority to enter into the transaction, as

11  W.F. had no knowledge of the transaction and had not authorized it. JODI HAMRICK

12  and D.G. submitted a forged and altered Internal Revenue Service K-1 tax form as part of

13  the application. The altered K-1 form showed that D.G. was a 51% owner of GCF, when

14  – as JODI HAMRICK and D.G. knew – D.G. and W.F. each owned 50%. JODI

15  HAMRICK and D.G. submitted the altered K-1 to mislead MSBL into believing that

16  D.G. had unilateral authority to enter into the transaction on GCF's behalf.

17       13.   It was further part of the scheme and artifice to defraud that the initial

18  MSBL loan was funded on or about July 25, 2013, in the amount of approximately

19  $120,955. JODI HAMRICK and D.G. obtained subsequent loans from MSBL in 2014

20  and 2015 based upon additional fraudulent loan applications.

21       14.   It was further part of the scheme and artifice to defraud that that JODI

22  HAMRICK and D.G. concealed the existence of the MSBL loans from W.F. and others.

23  In an instant message exchange on or about August 13, 2013, JODI HAMRICK told D.G.

24  that she would put "it in income so [W.F.] will not see it, only the two of us will know it

25  is there." In an instant message exchange on or about February 10, 2014 – during a

26  discussion about applying for a second MSBL loan – D.G. told JODI HAMRICK, "I'm

27  doing it without [W.F.'s] knowledge, if anything goes wrong it won't be good." In an

28

Information/HAMRICK - 5

1 | instant message exchange on or about March 27, 2014, D.G. told JODI HAMRICK, "I
2 | can't let [W.F.] know this loan exists."

3 |      15.    It was further part of the scheme and artifice to defraud that, on or about
4 | July 17, 2015, D.G. entered into a written agreement with L.M. that was titled "Personal
5 | Loan Agreement." The Personal Loan Agreement provided that L.M. would loan
6 | $150,000 to D.G., who was identified as the "Borrower." The Personal Loan Agreement
7 | provided that the Borrower – D.G. – was responsible for repaying the loan on a set
8 | schedule. On or about February 1, 2016, D.G. sent an e-mail to JODI HAMRICK. In the
9 | email, D.G. asked JODI HAMRICK to fraudulently alter the Personal Loan Agreement
10 | by identifying GCF, rather than D.G., as the Borrower. D.G. stated: "Otherwise I could
11 | be stuck with this." An altered Personal Loan Agreement was prepared that identified
12 | GCF as the Borrower in the text (although D.G. was still listed as the Borrower in the
13 | signature block). As JODI HAMRICK and D.G. knew, W.F. had no knowledge of, and
14 | did not authorize, either the initial Personal Loan Agreement or the alteration that
15 | purported to make GCF responsible for the debt.

16 |      16.    It was further part of the scheme and artifice to defraud that, in or about
17 | December 2015, JODI HAMRICK and D.G. arranged for the sale of approximately
18 | $143,000 of GCF assets, in the form of receivables, to BizFi. BizFi paid GCF
19 | approximately $100,000 for the assets. In connection with this sale, D.G. signed a
20 | Merchant Agreement with BizFi in which D.G. falsely certified that he had authority to
21 | enter into the transaction. As JODI HAMRICK and D.G. knew, W.F. had no knowledge
22 | of this transaction and did not authorize it.

23 |      17.    It was further part of the scheme and artifice to defraud that, in or about
24 | October of 2015, JODI HAMRICK and D.G. arranged for GCF to borrow money from
25 | Quarterspot. As JODI HAMRICK and D.G. knew, W.F. had no knowledge of this
26 | transaction and did not authorize it. On or about October 28, 2015, JODI HAMRICK and
27 | D.G. submitted a false and fraudulent "Borrower Agreement" to Quarterspot, which
28 | included forged signatures for W.F. JODI HAMRICK and D.G. also submitted a forged

Information/HAMRICK - 6

driver's license in the name of W.F. The forged driver's license showed a photograph of "J.O.", a GCF employee.

18. It was further part of the scheme and artifice to defraud that, on or about October 28, 2015, JODI HAMRICK and D.G. discussed the fraudulent Quarterspot loan application and the forged driver's license over instant messaging. The exchange was triggered by J.O.'s objection to the use of the forged driver's license. J.O. messaged JODI HAMRICK and asked her "to not use my ID for anything, and never ask me to do that again." JODI HAMRICK responded, "ok – and ok, sorry." D.G. then instructed JODI HAMRICK to "tell [J.O.] you canceled the deal." JODI HAMRICK responded "ok." D.G. then told JODI HAMRICK, "you don't need to cancel the deal," and "it would be nice not to have [W.F.] involved." D.G. later told JODI HAMRICK, "I told him [W.F.] it was canceled though, that's our story." On or about October 28, 2015, JODI HAMRICK and D.G. submitted fraudulent loan documents with W.F.'s forged signature.

19. It was further part of the scheme and artifice to defraud that JODI HAMRICK and D.G. made false and misleading statements and omissions in connection with a legal action instituted by W.F. in King County Superior Court. W.F. filed the action on or about December 21, 2015, alleged that D.G. had improperly used GCF funds for personal purposes and had mismanaged GCF. The false and misleading statements by JODI HAMRICK and D.G. included, but were not limited to: a January 16, 2015, declaration by D.G. in which he falsely stated that he did not authorize the submission of falsified documents to QuarterSpot; a May 19, 2016, declaration by JODI HAMRICK in which she falsely stated that she had not concealed transactions in GCF's records; and a March 23, 2016, deposition given by JODI HAMRICK in which she denied knowledge of the forgery and fraud associated with the Quarterspot loan.

## C.   Execution Of The Scheme To Defraud

20. On or about the dates set forth below, at Mukilteo, within the Western District of Washington, and elsewhere, having devised the above-described scheme and

Information/HAMRICK - 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  artifice, JODI HAMRICK and D.G., for the purpose of executing this scheme and

2  artifice, did knowingly cause to be transmitted by wire communication in interstate and

3  foreign commerce writings, signs, signals, pictures, and sounds, each transmission of

4  which constitutes a separate Count of this Information.

| Count | Date | Sender | Recipient | Wire Transmission |
|-------|------|--------|-----------|-------------------|
| 1 | 7/11/15 | Safeway (Everett) | American Express (Phoenix, Arizona) | $90.68 credit card transaction |
| 2 | 7/12/15 | Safeway (Everett) | American Express (Phoenix, Arizona) | $334.82 credit card transaction |
| 3 | 7/16/15 | "T.M.," LMP (Mukilteo) | American Express (Phoenix, Arizona) | $210.00 credit card transaction |
| 4 | 7/16/15 | Back Porch Wine & Spirit (Everett) | American Express (Phoenix, Arizona) | $65.56 credit card transaction |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## ASSET FORFEITURE ALLEGATION

21.  The allegations contained in Counts 1, 2, 3, and 4 of this Information are
hereby realleged and incorporated by reference for the purpose of alleging forfeiture.
Upon conviction of any of the offenses alleged in Counts 1, 2, 3, and 4, the Defendant
JODI HAMRICK shall forfeit to the United States, pursuant to Title 18, United States
Code, Section 981(a)(1)(C), by way of Title 28, United States Code, Section 2461(c), all
property constituting or traceable to proceeds of the offense, including but not limited to
a sum of money reflecting the proceeds she obtained from the offense.

Information/HAMRICK - 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1        **Substitute Assets.** If any of the above-described forfeitable property, as a result of

2 any act or omission of the Defendant,

3       1.       cannot be located upon the exercise of due diligence;

4       2.       has been transferred or sold to, or deposited with a third party;

5       3.       has been placed beyond the jurisdiction of the Court;

6       4.       has been substantially diminished in value; or,

7       5.       has been commingled with other property which cannot be divided without

8            difficulty;

9 it is the intent of the United States to seek the forfeiture of any other property of the

10 Defendant up to the value of the above-described forfeitable property pursuant to Title

11 21, United States Code, Section 853(p).

12

13       DATED this 7th day of July, 2020.

14

15

16

17                             BRIAN T. MORAN

                                United States Attorney

18

19

20                             ANDREW C. FRIEDMAN

                            Assistant United States Attorney

21

22

23                             MICHAEL DION

                            Assistant United States Attorney

24

25

26

27

28

Information/HAMRICK - 9